IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**MICHAEL JOHANNES,**           )
                                )
       Plaintiff,              )
                                )
   vs.                          )     2:16cv136
                                )     Electronic Filing
                                )
**BOROUGH OF WILKINSBURG, et. al.,** )
                                )
                                )
       Defendants.             )

**MEMORANDUM OPINION**

**I.    Introduction**

This matter is before the Court on a Motion to Dismiss (Doc. No. 38) filed by Defendants Borough of Wilkinsburg ("Wilkinsburg"), Chief of Police Ophelia Coleman ("Chief Coleman"), former Borough Manager Marla Marcinko ("Macinko"), former Borough code enforcement officer Daniel S. Freidson ("Freidson"), and Borough code enforcement employee James Frank ("Frank"). In his Amended Complaint, Plaintiff Michael Johannes ("Plaintiff") seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights in conjunction with a dispute over a parcel of real property located at 807 Walnut Street in Wilkinsburg, Pennsylvania. (Doc. No. 17 at ¶ 28). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

**II.    Factual Background**

In April of 2014, Plaintiff and several associates "took possession of an abandoned structure" located at 807 Walnut Street ("the Property") with the intent to ultimately obtain

ownership of that property. (Doc. No. 17 at ¶¶ 11-17). Plaintiff found the place to be in a state of neglect, "stacked to the brim with junk, old carpets, refuse, etc.," and with no plumbing, electric, or heat. (Id. at ¶ 13). From April 2014 until June 2014, Plaintiff and his associates cleaned and gutted the property and began to repair and install plumbing and electricity. (Id. at ¶ 15).

At all times, the title to the Property belonged to the estate of its last occupant, the late Nancy Schillero. (Id. at ¶ 14.) Plaintiff avers that each of Schillero's three children "had wholly refused any interest or dominion over the premises" due to the burdens of unpaid real estate taxes and an old mortgage. (Id. at ¶¶ 12-13.) After obtaining possession of the premises, Plaintiff filed an Action to Quiet Title in the Court of Common Pleas of Allegheny County on April 15, 2014, seeking to compel the heirs to file an action for ejectment or be forever barred from the property. (Id. at ¶¶ 17-18).

On June 13, 2014, eight Wilkinsburg police officers arrived at the Property and ordered Plaintiff and his associates to leave, threatening to charge them with criminal trespass. (Id. at ¶ 9). Plaintiff contends that he "showed them [he] had gained possession of the property and was entitled to civil process" but was disregarded.[1] (Id.).

On June 16, 2014, Plaintiff alleges that Friedson, acting in his capacity as a code-enforcement officer, instructed Plaintiff that Wilkinsburg was going to board up the house and that Plaintiff should stay away. (Id. at ¶ 22). Code enforcement employees screwed boards and restraints into the house so that Plaintiff could not enter it, causing damage to the Property and restricting Plaintiff's access. (Id. at ¶ 23). Plaintiff subsequently filed a "Petition for Temporary Restraining Order and Preliminary Injunction" on June 17, 2014, claiming that he had acquired

---

[1] In support of this proposition, Plaintiff cites to a court order issued by Judge Timothy O'Reilly that Plaintiff did not obtain until November 18, 2014 – almost five months later. (Id. at ¶ 9).

title to the Property and that Wilkinsburg and its employees were violating his constitutional rights by preventing him from accessing the home. (Id. at ¶¶ 29-30; Doc. No. 39-2). Plaintiff contends that Wilkinsburg code enforcement officers then retaliated against him by posting a "Violation Notice" and a "No Entry" sign on another piece of property that he owned. (Id. at ¶ 30).

On November 18, 2014, Judge Timothy O'Reilly of the Allegheny County Court of Common Pleas entered an interlocutory Order stating that "Plaintiff has gained possession of the Property at 807 Walnut Street" and "may remain on the Property in conformity with Borough Ordinances." (Id. at ¶ 31; Doc. No. 39-2 at 14). Judge O'Reilly ordered Plaintiff to raise an estate for Nancy Schillero within 90 days in order to serve the estate with notification of his Action to Quiet Title and cautioned that failure to do so would result in reconsideration of the Order. (Id. at 15).

Prior to the issuance of Judge O'Reilly's Order, and apparently unbeknownst to Judge O'Reilly, an estate had already been raised for the last owner of the Property, Nancy Schillero, in the Orphans' Court Division of the Allegheny County Court of Common Pleas. (Doc. No. 39-4).[2] Upon learning of Plaintiff's Action to Quiet Title, the Schillero estate filed a timely "Petition to Intervene, Reconsider Order of Court and Eject Trespasser." (Doc. No. 39-1; Doc. No. 39-2). On January 15, 2015, Judge O'Reilly ordered that the Action to Quiet Title (and the

---

[2] Although Plaintiff cites heavily to Judge O'Reilly's initial order, the Amended Complaint lacks any mention of the subsequent orders issued by Judge O'Reilly and Judge Kathleen Durkin in the same proceedings. This Court may take judicial notice of the existence of those proceedings and the judicial opinions resulting from those proceedings in resolving a 12(b)(6) motion. See, e.g., M & M Stone Co. v. Pennsylvania, 388 F. App'x 156, 162 (3d Cir. 2010) ("[W]e have held that a prior judicial opinion constitutes a public record of which a court may take judicial notice" in the resolution of a 12(b)(6) motion).

3

Petition to Intervene) be transferred to the Orphans' Court and merged with the related estate action for disposition. (Doc. No. 39-1; Doc. No. 39-2; Doc. No. 39-4).

On March 25, 2015, Judge Kathleen Durkin of the Orphans' Court issued an Order rejecting Plaintiff's claim to the Property "as not valid and as a non-priority claim." (Doc. No. 39-4 at 60). Judge Durkin ordered that the Property be sold and the proceeds distributed to the pertinent taxing authorities, with any remaining tax obligations discharged. (Id.).

Plaintiff initiated the instant action on February 3, 2016. (Doc. No. 1). Plaintiff filed his Amended Complaint on April 7, 2016. (Doc. No. 17). Defendants moved to dismiss on May 16, 2016 (Doc. No. 38), and Plaintiff filed responses in opposition on May 16 and 17, 2016 (Doc. Nos. 40, 43). This matter is ripe for review.

### III. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely

4

consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57) (internal citation omitted).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the Fowler court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

5

> *This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.*

Fowler, 578 F.3d at 210-11 (emphasis added).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir. 1999)). See also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. See, e.g., Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

IV. **Analysis**

The crux of Plaintiff's allegation is that Wilkinsburg and the individual defendants violated his constitutional rights by preventing him from accessing the Property. Plaintiff also contends that the Defendants retaliated against him for seeking title to the Property by condemning another one of his properties. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. In order to prevail, he must demonstrate: (1) that he was deprived of a right, privilege or immunity

6

secured by the Constitution or the laws of the United States, and (2) that the conduct complained of was committed by a person acting under color of state law. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1264 (3d Cir. 1994).

With respect to the first element of his Section 1983 claim, Plaintiff primarily alleges that Defendants violated his procedural and substantive due process rights because police and code enforcement officers unlawfully prevented him from entering the Property.[3] In order to state a procedural due process claim, plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 238 (3d Cir. 2013). To establish a substantive due process claim under §1983, plaintiff must prove (1) the particular interest at issue is protected by the Fourteenth Amendment, and (2) the government's deprivation of that protected interest shocks the conscience. Connection Training Serv. v. City of Phila., 358 F. App'x 315, 319 (3d Cir. 2009); see Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 172 (3d Cir.2001) (substantive due process is violated when state conduct is "arbitrary, or conscience shocking, in a constitutional sense") (internal quotation omitted). Both claims require Plaintiff to show that he had a "legitimate claim of entitlement" to the protected property interest. Bd. of Regents of State College v. Roth, 408 U.S. 564, 577 (1972).

The protected property interest asserted by Plaintiff in this case is his claim of ownership of the Property. However, the Pennsylvania state courts have already determined that Plaintiff never had any ownership interest in the Property. Plaintiff's Action to Quiet Title resulted in a

---

[3] Plaintiff also attempts to assert claims pursuant to the Pennsylvania Constitution. (Doc. No. 17 at ¶ 28). It is well-settled that "neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Comm. 2006).

7

ruling from Judge Durkin that Plaintiff's ownership claim over the Property was "not valid." (Doc. No. 39-4 at 60). Plaintiff concedes that his ownership interest was based on nothing more than the fact that he broke into the building and began cleaning it up.[4] To the extent that Plaintiff may have intended to seek ownership by adverse possession, his complaint makes clear that he possessed the property for only two months, well short of the 21-year period required under Pennsylvania law. See Baylor v. Soska, 658 A.2d 743, 744 (Pa. 1995) ("[O]ne who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years."). Plaintiff's inability to establish a protected interest in the Property is fatal to each of his due process claims.

Plaintiff, in response, suggests that he obtained ownership of the Property by virtue of Judge O'Reilly's November 18, 2014 Order. This is simply inaccurate. Judge O'Reilly's interlocutory Order recognized that Plaintiff had a temporary possessory interest in the Property for purposes of bringing an Action to Quiet Title,[5] but explicitly cautioned that Plaintiff's interest was subject to Wilkinsburg Borough Ordinances and conditioned upon Plaintiff raising an estate and contacting the titled owners of the property. The Order did not establish that Plaintiff was the rightful and valid owner of the Property, but simply clarified that Plaintiff had standing to file

---

[4] Plaintiff repeatedly objects that he was "made to look like a 'trespasser' and a 'squatter'" for attempting to "possess and clean up an abandoned house." (Doc. No. 40 at 6). He appears to argue that the law permits him to gain ownership of an abandoned house simply by entering and commencing repair work. (Id. at 10).

[5] In Pennsylvania, a quiet title action may only be brought by a party in possession of property. Bride v. Robwood Lodge, 713 A.2d 109, 111 (Pa. Super. Ct. 1998). There is a "substantive right of action granted to a plaintiff in possession to compel a defendant out of possession to bring an action in ejectment against the plaintiff." Id. (quoting Hemphill v. Ralston, 123 A. 459, 460 (Pa. 1924)). Judge O'Reilly's Order recognized that Plaintiff was currently in possession of the property because such recognition is "a jurisdictional prerequisite to a quiet title action." Id. His Order did not make any ruling as to the issue of actual ownership.

his claim. That claim was ultimately defeated in state court, as detailed above. (Doc. No. 39-4 at 60). Plaintiff does not cite any facts to overcome this hurdle.

To the extent that Plaintiff is claiming that he did not receive the procedural due process to which he was entitled as a *possessor* of the Property (rather than as an owner), that claim is belied by his own averments and the relevant state court proceedings. Plaintiff litigated his property claim to a final (albeit unsuccessful) determination in a state court proceeding that satisfied all of the procedural requirements of due process. Although Plaintiff repeatedly contends that the rulings against him by Judge O'Reilly and Judge Durkin are "irrelevant," "beside the point," and "none of . . . [anyone's] business," he does not set forth any facts suggesting that those proceedings failed to provide him with due process or that those decisions shocked the conscience. (Doc. No. 40 at 20). Moreover, to the extent that Plaintiff challenges the outcome of those state court proceedings, such challenge would be barred by the doctrine of collateral estoppel. See Welch v. Bank of America, 2014 WL 550595, at *7 (W.D. Pa. Feb. 11, 2014) (noting that "[i]ssue preclusion bars a second or successive litigation of an issue of fact or law that was actually litigated and resolved in an earlier litigation, even if the issue recurs in the context of a different claim.") (quoting source omitted).[6]

In short, the Amended Complaint and the state court judicial proceedings discussed therein clearly reveal that Plaintiff never obtained an ownership interest in the Property. At most, Plaintiff had a limited possessory interest that he obtained by unlawfully entering the

---

[6] The elements of collateral estoppel or issue preclusion are as follows: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in the prior action. Id. Each of those elements is clearly satisfied with respect to the state court's determination that Plaintiff had no valid claim to the Property.

9

premises and making some repairs. Because each of Plaintiff's due process claims is premised entirely upon his alleged ownership of the Property, and because Plaintiff received the due process to which he was entitled in state court, each of his due process claims must be dismissed.

In addition to his due process allegations, Plaintiff attempts to state a First Amendment retaliation claim. His lone allegation with respect to this claim is that unspecified persons working for "Wilkinsburg Code Enforcement" placed a "No Entry" sign and a notice of code violations on the door of another property owned by the Plaintiff. (Doc. No. 17 at ¶ 30). Plaintiff contends that this "clear act of retaliation" took place in response to his state court litigation.

It is well-settled that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998). Personal involvement "can be shown through allegations of personal direction or of actual knowledge and acquiescence," but such allegations "must be made with appropriate particularity." Id. In the instant case, it is unclear against whom Plaintiff is asserting his retaliation claim because he has completely failed to identify any individuals responsible for the alleged actions.[7] To the extent that his retaliation claim is directed at any of the individual Defendants, that claim must be dismissed for lack of personal involvement.

With respect to Wilkinsburg, Plaintiff avers, in conclusory fashion, that Wilkinsburg took unlawful action pursuant to an "unconstitutional, illegal policy, practice, and custom," including "a willful or negligent failure or refusal to provide adequate training to police officer and code

---

[7] Indeed, Plaintiff has generally failed to make any specific allegations *at all* concerning the majority of the individual Defendants. The only substantive reference to any of the individual Defendants in his Amended Complaint is his averment that Friedson notified Plaintiff that the Property was going to be boarded up and that Plaintiff should stay clear. (Doc. No. 17 at ¶ 22). There are no allegations at all concerning Chief Coleman, Jim Frank, or Marla Marcinko.

enforcement personnel." (Doc. No. 17 at ¶ 5). However, he has failed to actually plead the existence or articulate the contours of any particular or specific policy, custom or practice. This failure is fatal to Plaintiff's attempt to hold Wilkinsburg liable for the constitutional violations alleged. See McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."); Kranson v. Valley Crest Nursing Home, 755 F.2d 46, 51 (3d Cir. 1985); McTernan, 564 F.3d at 657 ("Our jurisprudence is clear that '[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.'") (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). Plaintiff's retaliation claim against Wilkinsburg must be dismissed.

## V.     Conclusion

In light of the foregoing, Defendants' Motion to Dismiss (Doc. No. 38) will be granted. With respect to Plaintiff's due process claims, the Court finds that they are incapable of being cured by amendment because the state court decisions underlying this action are preclusive and speak for themselves. See Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004); Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

With respect to his retaliation claim, the Court will provide Plaintiff with an opportunity to seek to amend his complaint in order to state the names of the individuals responsible for the alleged violation and/or the custom, policy or procedure relied on by the municipality to effectuate the constitutional violation alleged. Leave to file an amended complaint along with any proposed complaint must be filed within 14 days, if so desired. Failure to so move within that time frame will result in a waiver of the right to seek such relief.

An appropriate order follows.

Date: January 9, 2017

                                                          s/David Stewart Cercone
                                                          David Stewart Cercone
                                                          United States District Judge

cc:      Michael Johannes
          283 Second Street Pike
          Suite 185
          Southampton, PA 18966

          (*Via First Class Mail*)

          Christian D. Marquis, Esquire
          April L. Cressler, Esquire

          (*Via CM/ECF Electronic Mail)*